UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**JAMES EDWARD MCWILSON,**

   Plaintiff,

v.                                              No. 4:23-cv-01104-P

**BELL TEXTRON INC.,**

   Defendant.

## OPINION & ORDER

Before the Court is Defendant's Motion to Dismiss. ECF No. 26. Having considered the Motion, briefs, and applicable law, the Court concludes that the Motion should be and is hereby **GRANTED in part and DENIED in part**.

## BACKGROUND

This case arises from alleged racial discrimination while Defendant Bell Textron employed Plaintiff James McWilson. McWilson, an African-American male, worked for Defendant as a Turning Machine Operator from Aug. 30, 2020 to June 24, 2022. After almost eight months of employment, one of McWilson's co-workers—Blake Murphy—followed McWilson home and threatened him by stating he knew where he lived and that if he saw a "*white* truck, just know that's me." An employee identified as "Clark" reported the incident to human resources, and Defendant investigated it. While affirming that the incident occurred, Defendant concluded that it could not substantiate whether any threats were made. On the same day, McWilson found dents on his toolbox, which he believes were made by Murphy.

Then, on June 1, 2021, McWilson contacted his union representative to report that Murphy continued to harass him, and on June 7, McWilson and his representative met with HR to discuss another incident. McWilson explained that while Murphy is generally a loud

person, he "yells and hollers at Plaintiff," explicitly targeting him because he is black. McWilson began altering his route to work and tried to avoid Murphy altogether.

Finally, on May 20, 2022, as McWilson walked past Murphy, he "began making monkey sounds and pounding his chest in an effort to emulate the behavior of an ape." As McWilson walked by to report the event, Murphy repeated the sounds. Roughly one month later, on June 24, 2022, Defendant terminated McWilson's employment. McWilson filed a charge with the Equal Employment Opportunity Commission on January 5, 2023, and received a right to sue letter on August 3, 2023. McWilson then brought this suit against his former employer, asserting four causes of action: (1) race discrimination in violation of Title VII; (2) retaliation; (3) hostile work environment; and (4) violation of 42 U.S.C. § 1983. Defendant has filed a Motion to Dismiss the Complaint, which is ripe for the Court's review.

## LEGAL STANDARD

Rule 12(b)(6) allows a defendant to move to dismiss an action if the plaintiff fails to state a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6). In evaluating a Rule 12(b)(6) motion, the court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *See Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) (quoting *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 442 (5th Cir. 1986)). "Further, 'all questions of fact and any ambiguities in the controlling substantive law must be resolved in the plaintiff's favor.'" *Id.* (quoting *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001)). However, courts are not bound to accept as true legal conclusions couched as factual allegations. *See In re Ondova Ltd.*, 914 F.3d 990, 993 (5th Cir. 2019) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The well-pleaded facts must permit the court to infer more than the mere possibility of misconduct. *See Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). That is, the complaint must allege enough facts to move the claim across the line from conceivable to plausible. *See Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Determining whether the

plausibility standard has been met is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Iqbal*, 556 U.S. at 663–64).

## ANALYSIS

**A. Discrimination Claim**

Defendant argues McWilson's discrimination claim should be dismissed for three reasons. *See* ECF No. 27 at 11. *First*, Defendant argues McWilson's discrimination claim is barred, at least in part, by the 300-day statute of limitations applicable to his EEOC charge. *See id.* *Second*, Defendant argues McWilson failed to exhaust his discrimination claim with the EEOC. *See id.* *Third*, Defendant argues that even if McWilson's discrimination claim was timely and properly exhausted, the allegations fail to state a plausible claim under either a disparate impact or disparate treatment theory of discrimination. *See id.* The Court addresses each argument in turn.

1. McWilson's discrimination claim is time-barred in part.

As an initial matter, Defendant argues McWilson's claim is time-barred in part because at least some of the alleged discriminatory conduct occurred 300 days prior to the EEOC charge. *See* ECF No. 27 at 11–12. The Court agrees. Under Title VII, a plaintiff must exhaust his administrative remedies by filing a charge with the EEOC within 300 days "after the alleged unlawful employment practice occurred." *See* 42 U.S.C. § 2000e-5(e)(1). Consequently, courts must dismiss claims where a plaintiff fails to show administrative exhaustion. *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 272 (5th Cir. 2008). "The 300–day filing period is not jurisdictional, but rather is more akin to and operates as a limitations period." *Stith v. Perot Sys. Corp.*, No. CIV.A. 302CV1424D, 2004 WL 690884, at *3 (N.D. Tex. Mar. 12, 2004), *aff'd*, 122 F. App'x 115 (5th Cir. 2005) (Fitzwater, J.). Here, McWilson filed an EEOC charge on January 5, 2023. ECF No. 29 at 1. Thus, any conduct before March 11, 2022, occurred outside the 300-day window.

In McWilson's Response, the issue of administrative exhaustion is addressed only briefly. McWilson states that "Defendant laid Plaintiff

off at the end of his shift on June 24, 2022" and "[o]n or about January 5, 2023, Plaintiff filed his charge of discrimination with the [EEOC] [on] or about January 5, 2023." ECF No. 29 at 1, 3. McWilson then recites Paragraph 6 of his Complaint, which states: "[a]ll conditions precedent to jurisdiction have occurred or been complied with: a charge of discrimination was filed with Equal Employment Opportunity Commission within three-hundred days of the acts complained of herein . . . ." *Id.* at 3. Despite McWilson's boilerplate assertions to the contrary, his complaint alleges several discriminatory acts outside the 300-day window. Specifically, McWilson asserts that on April 8, 2021, Blake Murphy threatened him—following him home and saying he knew where McWilson lives. ECF No. 25 at 3. McWilson also alleges that he found "several dents in his toolbox" on April 14, 2021, after he reported Murphy's behavior—which McWilson attributes to Murphy. *Id.* at 4.

Because McWilson's Response does not address Defendant's argument that the discrimination claim is time-barred in part, and because the aforementioned conduct occurred outside the 300-day window before the charge, McWilson has failed to allege facts that show he timely exhausted his administrative remedies with the EEOC. *See Arkansas v. Wilmington Tr. Nat'l Ass'n*, No. 3:18-CV-1481-L, 2020 WL 1249570, at *5 (N.D. Tex. Mar. 16, 2020) (Lindsay, J.) ("Failure of a party to respond to arguments raised in a motion to dismiss constitutes waiver or abandonment of that issue at the district court level."); *see also Black v. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006). McWilson's bare assertion that "[a]ll conditions precedent to jurisdiction have occurred or been complied with" is insufficient to survive Defendant's Motion to Dismiss. ECF No. 29 at 3. Therefore, the discrimination claims arising from events before March 11, 2022, are time-barred. However, McWilson also alleges that on May 20, 2022, when McWilson began walking past Murphy, Murphy "began making monkey sounds and pounding his chest in an effort to emulate the behavior of an ape." *See* ECF No. 25 at 4. Because this conduct occurred within the 300-day window—after March 11, 2022—for this single event, McWilson's discrimination claim survives this first inquiry.

4

### 2. McWilson exhausted all administrative remedies.

Defendant also argues that McWilson failed to exhaust his discrimination claim because the claim does not arise out of the EEOC charge. On this, the Court disagrees. Under Title VII, a plaintiff must exhaust all administrative remedies before filing in federal court. *Story v. Gibson*, 896 F.3d 693, 698 (5th Cir. 2018). "To exhaust, a plaintiff must file a timely charge with the EEOC and then receive a notice of the right to sue." *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 337 (5th Cir. 2021) (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002)). Administrative exhaustion "is not a jurisdictional requirement," but neither is it merely "a procedural 'gotcha' issue." *Id.* (citations omitted). Instead, administrative exhaustion "is a mainstay of proper enforcement of Title VII remedies" and exists "to facilitate the EEOC's investigation and conciliatory functions and to recognize its role as primary enforcer of anti-discrimination laws." *Id.* (cleaned up) (citations omitted).

"To satisfy exhaustion, a claim generally must arise out of the plaintiff's EEOC charge." *Id.* The scope of a Title VII suit may extend as far as—but no further than—the scope of the EEOC investigation, which could reasonably grow out of the administrative charge. *Fine v. GAF Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993). And because the "provisions of Title VII were not designed for the sophisticated, and most complaints are initiated *pro se*, the scope of an EEOC complaint should be construed liberally." *Pacheco v. Mineta*, 448 F.3d 783, 788–89 (5th Cir. 2006). Administrative exhaustion is a fact-intensive analysis where a plaintiff need not check a specific box. *Pacheco*, 448 F.3d at 792. But in this case, McWilson did check the box—stating he was discriminated against based on "[r]ace/national origin, hostile work environment & wrongful termination." ECF No. 28 at 6. Additionally, McWilson's charge recounts the events described in his Complaint and concludes by stating, "[i]nstead of properly investigating these instances of discrimination, I was terminated." *Id.* Thus, for these reasons, the Court concludes that McWilson's discrimination claim arises from his EEOC charge, and he exhausted his administrative remedies concerning this claim.

5

### 3. McWilson plausibly alleges a disparate treatment claim.

Finally, Defendant argues that McWilson's Complaint fails to allege facts sufficient to state a claim for discrimination under either a disparate treatment or disparate impact theory. The Court begins by noting that it is not entirely clear whether McWilson alleges a disparate impact claim under 42 U.S.C. § 2000e-2(a)(2) or a disparate treatment claim under 42 U.S.C. § 2000e-2(a)(1). McWilson simply cites "42 U.S.C. Section 2000e-(2)(a)." ECF No. 25 at 10. A Title VII action may proceed under disparate treatment or disparate impact theory. *See Carpenter v. Stephen F. Austin State Univ.*, 706 F.2d 608, 619–20 (5th Cir. 1983). Either theory may apply to the same set of facts. *See id.* Generally, in a disparate *treatment* case, a plaintiff must show the employer's pattern and practice of racial discrimination and establish discriminatory motivation or intent by direct or circumstantial evidence. *Id.* (internal citations omitted). Under the disparate *impact* theory, the plaintiff must set forth discrete, facially neutral practices that more severely impact protected groups than unprotected groups. *Id.* Because McWilson does not allege the existence of a facially neutral policy at issue, to the extent Plaintiff asserts a disparate impact claim under 42 U.S.C. § 2000e-2(a)(2), such a claim fails. Thus, the Court now turns to whether McWilson has plausibly alleged facts supporting a claim for disparate treatment under 42 U.S.C. § 2000e-2(a)(1).

Although a plaintiff does not have to submit evidence to establish a prima facie case of discrimination at the pleadings stage, he had to plead sufficient facts on all the ultimate elements of a disparate treatment claim to make his case plausible. *See Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016). At the Rule 12(b)(6) stage, the court's analysis of the Title VII claim is governed by *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)—and not the evidentiary standard outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Olivarez v. T-Mobile USA, Inc.*, 997 F.3d 595, 599 (5th Cir. 2021). Under *Swierkiewicz*, "there are two ultimate elements a plaintiff must plead to support a disparate treatment claim under Title VII: (1) an adverse employment action, (2) taken against a plaintiff *because of* her protected status." *Id.*

As to the first element, McWilson alleges he "received adverse employment action in the form of a hostile work environment perpetuated by a white employee named Blake Murphy for which Defendant knew about and allowed it to persist." ECF No. 25 at 6. Specifically, McWilson alleges Defendant's "fail[ure] to prevent and/or promptly correct the discriminatory behavior of McWilson's co-worker, Blake Murphy, had a disparate and adverse impact on Plaintiff because of his race, color and national origin." *Id.* at 9. An adverse employment action includes "discrimination against any individual with respect to his compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1); *see Hamilton v. Dallas Cnty.*, 79 F.4th 494, 506 (5th Cir. 2023).

Here, McWilson alleges that on May 20, 2022, when he was walking past Murphy, "Murphy began making monkey sounds and pounding his chest in an effort to emulate the behavior of an ape." ECF No. 25 at 4. McWilson then "went to Guy Downing's office to report" the behavior, at which point "Murphy repeated the same behavior, sound effects and all[,] when Plaintiff walked towards Downing's office." *Id.* at 4–5. This incident was witnessed by "Front Line Leader Desmond McGuire," who reported the incident to HR and directed McWilson to speak with Guy Downing for further guidance. *Id.* at 5.

McWilson's allegations, taken as true, are sufficient to clear the 12(b)(6) threshold if the Court draws inferences in Plaintiff's favor. Termination is an adverse employment action. However, McWilson also alleges that requiring him to work in an abusive environment with Murphy altered his terms, conditions, or privileges of employment. ECF No. 25 at 8. The Court agrees. Title VII is not limited to mere "economically adverse employment actions." *Hamilton*, 79 F.4th at 504. As alleged, Defendant's failure to respond to these allegations forced McWilson to alter his route to work, change his parking routine, and avoid Murphy altogether—thereby altering the terms, conditions, and privileges of employment. *See* ECF No. 25 at 8. Consequently, McWilson sufficiently alleges that he suffered an adverse employment action.

For the second element, although it is not necessary to establish a *prima facie* case of discrimination under the *McDonnell Douglas*

7

framework at this stage, when a plaintiff alleges circumstantial evidence of discrimination, the framework is helpful to determine whether the complaint alleges facts that show an adverse employment action was "taken '*because of*' his protected status." *Olivarez*, 997 F.3d at 600 (quoting *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019)).

Here, the Court concludes that McWilson's First Amended Complaint is sufficient to allege that an adverse employment act was taken *because of* McWilson's race. For a claim to survive a motion to dismiss, plaintiffs are not expected to provide irrefutable proof that discrimination occurred; however, some facts must still be alleged to create a reasonable inference of discrimination. *Swierkiewicz*, 534 U.S. at 514–15. For instance, in *Hamilton*, the court held that requiring women to work the less desirable weekend shifts, while men did not, is sufficient to suggest a plausible discrimination claim. *See Hamilton*, 79 F.4th at 505–06. Sufficient facts may come in the form of discriminatory statements, relevant dates, and nationalities of some people involved in the adverse employment decisions. *See Cicalese*, 924 F.3d at 768; *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 441 (5th Cir. 2012). Additionally, while it is not required to survive a motion to dismiss, providing comparators is nonetheless adequate to nudge the claim across the line of plausibility. *See Olivarez*, 887 F.3d at 600. Making all reasonable assumptions in favor of McWilson, there is at least a plausible inference of causation.

McWilson alleges Murphy made "monkey sounds and pound[ed] his chest in an effort to emulate the behavior of an ape" on May 20, 2022, and reported the event to Guy Downing, presumably a supervisor. ECF No. 25 at 8. Further, Front Line Leader McGuire also witnessed these events and reported the incident to HR. *Id.* at 8–9. Despite these reports, McWilson alleges Defendant took no action to correct the behavior and instead chose to terminate McWilson's employment barely a month later. *Id.* at 5. Given Murphy's conduct, Defendant's awareness of Murphy's conduct, the lack of action on the part of Defendant, and McWilson's termination one month later, the Court concludes that McWilson's allegations, taken as true, "move the claim across the line

8

from conceivable to plausible." *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Accordingly, Defendant's Motion to Dismiss McWilson's disparate treatment claim arising from events *after* March 11, 2022, is **DENIED**.

### B. Retaliation

Defendant next argues McWilson's retaliation claims should be dismissed. *See* ECF No. 27 at 22. The Court disagrees. While a plaintiff need not establish a *prima facie* case to survive a motion to dismiss, they still must "plausibly allege facts going to the ultimate elements of the claim." *Cicalese*, 924 F.3d at 768. The elements of retaliation are "(1) the employee engaged in activity protected by Title VII; (2) the employer took adverse employment action against the employee; and (3) a causal connection exists between that protected activity and the adverse employment action." *Brazoria Cnty. v. EEOC*, 391 F.3d 685, 692 (5th Cir. 2004) (emphasis omitted).

Here, McWilson argues that Defendant engaged in two distinct acts of retaliation. *First*, McWilson alleges that "Murphy retaliated against Plaintiff in the form of threats of physical safety, damaging personal property, bullying harassment[,] and taunting." ECF No. 25 at 11. However, courts "do not hold employers liable under Title VII for every discriminatory act committed by employees in the workplace." *Long v. Eastfield Coll.*, 88 F.3d 300, 306 (5th Cir. 1996). A retaliation claim requires a plaintiff to allege that the *employer* took a retaliatory adverse employment action against the employee. *See Brandon v. Sage Corp.*, 808 F.3d 266, 273. A co-worker's act of retaliation against an employee ordinarily does not support a retaliation claim under Title VII. *Id.* To sue an employer under Title VII, a plaintiff must allege that a person with supervisory authority retaliated against them. *Id.* at 273–74. For vicarious liability, an employee is only considered a "supervisor" when "he or she is empowered by the employer to take tangible employment actions against the victim." *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013). Murphy is an employee of the facility, and despite being perceived as a "shop leader," he possesses no authority to act on behalf of Defendant, or to "take tangible employment actions." *See* ECF No. 25

9

at 2–3. Thus, Murphy's retaliatory actions may help support a hostile work environment claim, but a co-worker's actions alone do not support a retaliation claim.

*Second*, McWilson alleges he was "laid off in retaliation for making complaints about discriminatory behaviors under the guise of being classified as a surplus position." ECF No. 25 at 10–11. Further, he states, "[i]t appears it was easier for Defendant to sweep McWilson's complaints under the rug and dispose of him through a lay off." *Id.* at 11. Retaliation claims are not subject to the continuing violation doctrine. *See Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 583–84 n.2 (5th Cir. 2020). So, while McWilson alleges he made a "myriad" of reports, only one report is not time-barred—McWilson's report of the "monkey sounds" incident to Guy Downing. *Id.* Thus, by reporting Murphy's conduct, McWilson engaged in a protected activity. *See Long*, 88 F.3d at 305 (finding that employee engaged in a protected activity by filing complaints with a supervisor). And his termination constituted an adverse employment action. The only question remains whether McWilson alleges facts plausibly supporting a causal link between the protected activity and McWilson's termination.

Here, McWilson made the complaint roughly one month before his termination. *See* ECF No. 25 at 4–5. That proximity is sufficient to plausibly suggest a causal link at this stage. *See Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 1001 (5th Cir. 2022); *see also Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 578 (5th Cir. 2020) (retaliation plaintiff met prima facie burden based on timing alone by pointing to six-to-seven-week gap between protected activity and termination); *Garcia v. Pro. Cont. Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019) ("At the prima facie case, a plaintiff can meet his burden of causation simply by showing close enough timing between his protected activity and his adverse employment action."). Consequently, McWilson's termination so close to his complaint is plausible to suggest his termination resulted from his complaint to Defendant—at least at the motion to dismiss stage. Thus, the Defendant's Motion to Dismiss the retaliation claim is **DENIED**.

### C. Hostile Work Environment

A harassment claim may be brought by proving a Title VII violation based on a "hostile work environment" theory. *EEOC v. WC&M Enters., Inc.*, 496 F.3d 393, 399 (5th Cir. 2007). A hostile work environment exists when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. *Harris*, 510 U.S. at 21. For harassment to be sufficiently severe or pervasive to alter conditions of a victim's employment, not only must the victim perceive the environment as hostile, but the conduct must be such that a reasonable person would also find it hostile or abusive. *WC&M*, 496 F.3d at 399.

As addressed previously, McWilson filed a timely EEOC charge for a single discrete act—the May 20, 2022, event in which Murphy "began making monkey sounds and pounding his chest in an effort to emulate the behavior of an ape." ECF No. 25 at 4. McWilson reported the incident to Downing, but McWilson alleges Defendant took no actions to correct the abusive behavior of its employees. *Id.* at 4–5. Importantly, "a single act of harassment may not be actionable on its own." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). Furthermore, the Supreme Court held that to be sufficiently severe to create a hostile work environment, something more is required than a 'mere utterance of an . . . epithet which engenders offensive feelings in an employee.' *Harris*, 510 U.S. at 21 (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986). Thus, to survive a motion to dismiss, McWilson's hostile work environment claim must be subject to the continuing violation doctrine. *See Heath v. Bd. of Supervisors for S. Univ. Agric. & Mech. Coll.*, 850 F.3d 731,736 (5th Cir. 2017) (confirming the continuing violation doctrine applies only to hostile work environment claims).

Under the continuing violation doctrine, plaintiffs do not have to show all alleged discriminatory conduct occurred within the actionable period if they demonstrate a series of related discriminatory acts, one or more of which fall in the limitations period. *See Felton v. Polles*, 315 F.3d 470, 487 (5th Cir. 2002). Discrete discriminatory acts are not actionable if time-barred, even when related to acts complained of in timely filed

11

charges. *See Nat'l R.R*, 536 U.S. at 113. Some discrete acts are easy to identify, including "failure to promote, denial of transfer, or refusal to hire." *Id.* at 114.

To demonstrate a continuing violation, plaintiffs must show that (1) the "separate acts" are related, (2) "the violation must be continuing; intervening action by the employer, among other things, will sever the acts that preceded it from those subsequent to it," and (3) that the doctrine is tempered by the court's equitable powers, so applying the continuing violation doctrine must "honor Title VII's remedial purpose." *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 329 (5th Cir. 2009).

The question here is whether the pre-March 11, 2022, events support the application of the continuing violation doctrine. *First*, concerning relatedness, McWilson experienced the same type of harassment from the same employee. *See* ECF No. 25 at 3–5. Thus, McWilson has carried his burden respecting the first element. *Second*, McWilson sufficiently alleges that the violation was ongoing. Murphy's threat occurred on April 8, 2021. ECF No. 25 at 3. McWilson reported the incident to HR, and after substantiating part of McWilson's claim, Defendant chose not to act. *See id.* McWilson then found dents in his toolbox, which he alleges were caused by Murphy. *Id.* at 4. While the First Amended Complaint is vague as to what occurs next, it lays out facts to suggest that Murphy repeatedly targeted McWilson, making him fear for his safety and entirely alter his behavior at work to avoid interacting with Murphy. *Id.* During this time, Defendant received multiple reports from McWilson and his union representative, and as alleged, Defendant failed to intervene. *Id.* at 4–5. These facts demonstrate repeated harassment "based on the cumulative effect of individual acts." *Nat'l R.R.*, 536 U.S. at 115. The very definition of a hostile work environment.

Further, no actions by Defendant severed these separate actions. Merely investigating the reported misconduct is insufficient to destroy the continuing nature of the hostile environment, as Defendant contends. *See* ECF No. 30 at 2. Rather, a continuing violation is severed when employers take "prompt remedial action to protect the claimant" by reprimanding the harasser or reassigning the claimant to a different supervisor. *Stewart*, 586 F.3d at 329. Making all reasonable

assumptions in favor of McWilson, the changes to McWilson's routine that did occur appear to arise from McWilson's choice and not that of Defendant's intervention. *See* ECF No. 25 at 4, 12. Thus, no intervening act severed the continuing nature of the claim.

*Third*, McWilson repeatedly tried to remedy the situation by avoiding Murphy and reporting the conduct. *See* ECF 25 at 4–5. Yet, Defendant allegedly took no remedial action during McWilson's employment. *See id.* Further, Defendant provides no equitable considerations that would prevent the Court from applying the full scope of the continuing violation doctrine. *See Heath*, 850 F.3d at 741. Thus, making all inferences in favor of the nonmovant, the Court concludes that the continuing violation doctrine applies.

Therefore, being a continuing violation, the totality of the circumstances plausibly supports a hostile work environment claim. A hostile work environment requires a plaintiff to show that: "(1) the victim belongs to a protected group; (2) the victim was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment affected a term, condition, or privilege of employment; and (5) the victim's employer knew or should have known of the harassment and failed to take prompt remedial action." *EEOC v. WC&M*, 496 F.3d at 399.

As required, McWilson is a member of a protected class, and he alleges he was subject to unwanted harassment based on his race. *See* ECF No. 25 at 2, 4. The employer knew of the harassment and failed to take prompt remedial action. *Id.* at 4–5. Last, the Supreme Court instructed that workplaces inundated with severe "discriminatory intimidation, ridicule, and insult" are sufficient to alter the 'terms, conditions, or privileges of employment.' *Harris*, 510 U.S. at 21. Here, McWilson experienced repeated threats and harassment, causing him to alter his route to work and actively avoid Murphy. Thus, McWilson has sufficiently plead facts to show that his terms and conditions of employment were altered because of racial discrimination. Consequently, Defendant's Motion to Dismiss the hostile work environment claim is **DENIED**.

**D. Section 1983**

The Court now turns to Plaintiff's Section 1983 claim. To state a viable Section 1983 claim, plaintiffs must allege that (1) a person or entity acting under color of state law, (2) deprived the plaintiff of a federal constitutional right. *Doe ex rel. Magee v. Covington Cnty. Sch. Dist.,* 675 F.3d 849, 854-55 (5th Cir. 2012) (en banc). There are various tests for analyzing whether a private corporation "acts under the color of state law." *Richard v. Hoechst Celanese Chem. Grp., Inc.,* 355 F.3d 345, 352 (5th Cir. 2003). Yet, McWilson failed to argue any. In fact, the First Amended Complaint fails to address how Defendant acted under the color of state law. *See* ECF No. 25 at 13–14. Nevertheless, McWilson's Response argues that:

> Defendant is in aerospace manufacturing and is a subsidiary of Textron Inc. that manufactures military rotorcraft at its facilities throughout the Dallas-Fort Worth Metroplex. This equipment is used exclusively by the United States military and allies that the United States military supplies. From this connection, the Defendant was acting upon its authority, real and perceived as a United States government actor.

ECF No. 29 at 11–12 (cleaned up).

McWilson cites no authority to support its position that Defendant acted under the color of state law. *See id.* Instead, McWilson suggests that Defendant's actions were as a federal actor merely because Defendant accepts contracts for the federal government. *See id.* However, private individuals generally are not considered to act under the color of state law. *Moody v. Farrell*, 868 F.3d 348, 352 (5th Cir. 2017). Instead, for Section 1983 liability to arise, a private corporation's actions must be "fairly attributable to the state." *West v. Atkins*, 487 U.S. 42, 49 (1988). However, actions by "private contractors [building roads, bridges, dams, ships, or submarines for the government] do not become acts of the government by reason of their significant or even total engagement in performing public contracts." *Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1982). A private corporation like Bell, constructing other military supplies for the federal government, is no different. Consequently, McWilson failed to state a claim upon which Section 1983 relief can be granted, and the Section 1983 claim is **DISMISSED**.

## CONCLUSION

Defendant's Motion to Dismiss (ECF No. 26) concerning the disparate treatment claims arising from events prior to March 11, 2022, and the Section 1983 claim is **GRANTED**, and the claims against them are **DISMISSED with prejudice**. But Defendant's Motion to Dismiss respecting the hostile work environment claim, the retaliation claim, and the disparate treatment claim arising from the events after March 11, 2022, are **DENIED**.

**SO ORDERED** on this **30th day of July 2024.**

_____
Mark T. Pittman
UNITED STATES DISTRICT JUDGE